**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DEVON DARNELL GLEASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12 CV 769 DDN |
| ) | |
| NORTHVIEW VILLAGE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court on motion of defendant Northview Village, Inc. for summary judgment against pro se plaintiff DeVon Darnell Gleason. (Doc. 32.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 18.) The court set oral argument for July 23, 2013. However, plaintiff did not appear. Therefore, rather than hear ex parte oral argument from defendant, the court took the motion under consideration on the parties' documents.

### I. BACKGROUND

On October 18, 2011, plaintiff DeVon Darnell Gleason commenced this action against defendant Northview Village, Inc. (Doc. 1.) In the complaint, plaintiff alleges sexual harassment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. (Id.) Plaintiff seeks reinstatement to full-time status, back pay, and compensation for pain and suffering. (Id.)

### II. MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on the sexual harassment claim, arguing that it cannot be held vicariously liable because defendant reasonably attempted to

prevent and promptly correct the sexual harassment and plaintiff unreasonably failed to avail himself of preventive and corrective opportunities.  Defendant also moves for summary judgment on the retaliation claim, arguing that plaintiff cannot show an adverse employment action and that defendant acted for a legitimate non-retaliatory reason.  (Doc. 33.)  Plaintiff filed a response to the motion, and defendant filed a reply.  (Docs. 42, 43.)

### III. FACTUAL BACKGROUND

Defendant, a Missouri corporation, operates a nursing home in St. Louis, Missouri. (Doc. 34-1); Missouri Secretary of State, http://www.sos.mo.gov/business/corporations/ (last visited July 16, 2013).[1]  On November 29, 2010, plaintiff personally submitted an employment application to James Moore who worked as a dietary director for defendant. (Doc. 34-1 at 1-4.)  Later that day, Moore hired plaintiff to work the evening shift in the dietary department.  (Doc. 34-2 at 21.)  Plaintiff began work the next day as a part-time dietary aide.  (Id. at 24.)

Defendant distributes employee handbooks to employees, including plaintiff, upon hire and reviews the handbooks with employees.  (Doc. 34-4 at 2; Doc. 43-1 at 2.)  Policy 702 of the handbook, titled "Harassment," states:

> The home is committed to providing a safe work environment that is free of harassment.  Actions, words, jokes, or comments based on an individual's sex, race, creed, color, ethnicity, age, religion, national origin, or any other legally protected characteristic will not be tolerated.
>
> Any individual who believes he/she is the victim of impermissible harassment should promptly report the facts of the incident to his/her Department Head or Administrator.  A prompt investigation will be conducted and the company will take appropriate corrective action where it is warranted.  Anyone engaging in any improper harassment will be subject to disciplinary action, including possible discharge.

---

[1] The court takes judicial notice of these corporate records.  See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("[Courts] may take judicial notice of public records and may thus consider them on a motion to dismiss.").

(Doc. 34-1 at 8.)  Defendant requires employees to sign acknowledgements of the Equal Opportunity Employment policy, which contain a summary of the policy.  (Id. at 9.)  On December 14, 2010, plaintiff read the summary of the policy and signed the acknowledgement.  (Id.; Doc. 34-2 at 12-13.)  Plaintiff understood the general practice of immediately reporting harassment and other forms of employment discrimination to management.  (Doc. 34-2 at 51-52.)

From the date of plaintiff's hire to March 2011, Moore commented several times on plaintiff's physical appearance.  (Id. at 9-10.)  For instance, Moore referred to plaintiff as "Shorty" and said to coworkers, "Isn't DeVon cute?" and, "He has a cute face."  (Id. at 9.)  Moore also commented around coworkers that plaintiff "had a fat butt" and that "big things come in small packages."  (Id. at 10.)  Plaintiff felt that Moore's remarks around female coworkers emasculated him.  (Id. at 9.)

In April 2011, plaintiff requested additional work hours.  (Id. at 28.)  Moore allowed plaintiff to work during the morning shift due to coworker Latoria Smith's maternity leave.  (Id. at 29; Doc. 34-1 at 10.)  Moore submitted an employee status form to move plaintiff temporarily to fulltime status for the duration of the maternity leave.  (Doc. 34-1 at 11.)  From April 2011 to June 6, 2011, Moore's interactions included a suggestion that plaintiff compensate him for the increased hours by showing his genitals, repeated references to plaintiff as "Boo" and comments about plaintiff's genitals in front of female coworkers, and touching plaintiff's buttocks.  (Doc. 34-2 at 35-36, 39-40.)  On several occasions, Moore locked plaintiff in his office with the lights off.  (Id. at 37-38.)  On one occasion in Moore's office, he demanded with the threat of termination that plaintiff lock the door, stated that plaintiff could take vacation only if plaintiff gave him "something," asked to perform a sexual act on plaintiff, turned off the lights, held plaintiff down, and touched plaintiff's genitals.  (Id. at 41-42.)  On June 1, plaintiff's mother, Annamarie Baker, called Moore to confirm that plaintiff would receive his requested vacation.[2]  (Doc. 34-3 at 10.)

---

[2] Plaintiff's mother works as Director of Payroll in Healthcare Accounting Services, the accounting office for defendant.  (Doc. 34-3 at 2.)

On June 3, 2011, plaintiff collected his paycheck from Moore's office.  (Doc. 34-2 at 31.)  On his cellphone, plaintiff recorded video of Moore's conduct.  (Id.)  When he returned home, plaintiff informed his mother of his interactions with Moore during the past two months.  (Doc. 34-3 at 11-12.)

Also on June 3, 2011, plaintiff's mother informed her supervisor, Barbara Smith, of Moore's conduct.  (Doc. 34-3 at 14-15.)  Smith responded that plaintiff needed to report Moore's conduct.  (Id.)  On June 6, 2011, plaintiff's mother contacted Debra Buchanan, plaintiff's union representative, who advised plaintiff to await the return of Judy Deering, administrator, from her vacation.[3]  (Id. at 17-18.)  However, Smith informed plaintiff's mother that Makhlouf Suissa, defendant's owner, requested an immediate report.  (Id. at 20.)

On June 7, 2011, plaintiff submitted a short written statement of Moore's conduct to Kathy Lorey, assistant administrator.  (Doc. 34-1 at 15; Doc. 34-2 at 31.)  Upon receipt, Lorey requested that plaintiff write a more detailed statement in the human resources office.  (Doc. 34-1 at 16-22; Doc. 34-2 at 31.)  As plaintiff wrote the more detailed statement, Moore walked into the office, read plaintiff's initial statement, and yelled at plaintiff.  (Doc. 34-2 at 32.)  Other employees escorted Moore from the office, and Lorey suspended him later that day.  (Id. at 33; Doc. 34-4 at 7.)  After completion of his written statement, defendant escorted plaintiff from the building and placed both Moore and plaintiff on leave of absence pending investigation pursuant to defendant's standard practice. (Doc. 34-2 at 34; Doc. 34-4 at 3, 7-8.)

Prior to this time, plaintiff did not report Moore's conduct nor had any supervisors witnessed it.  (Doc. 34-2 at 10-11.)  Due to Moore's threats, plaintiff feared that Moore would terminate his employment and cause his mother to lose her employment.  (Id. at 21.)  Plaintiff also feared that his story would not be believed due to Moore's popularity and Moore's personal relationship with Deering and Ralph Menees who worked in human resources.  (Id. at 15-19.)

---

[3] Defendant did not employ plaintiff's union representative.  (Doc. 34-3 at 17.)

- 4 -

In the following days, Lorey investigated the complaint by interviewing the dietary department's employees. (Doc. 34-4 at 8.) On June 13, 2013, Deering informed Moore of his termination. (Id. at 3; Doc. 34-1 at 25.) On June 14, 2011, defendant allowed plaintiff to resume work. (Doc. 34-4 at 3.) Plaintiff received wages for his scheduled hours during his leave of absence. (Doc. 34-2 at 45; Doc. 34-4 at 4.) Defendant creates schedules in thirty-day periods and had created the schedule pertinent to plaintiff's leave of absence by May 30, 2011. (Doc. 34-1 at 43; Doc. 34-4 at 4.) Plaintiff received fewer scheduled hours during and immediately after his leave of absence. (Doc. 34-1 at 34-35; Doc. 34-2 at 44-45.) However, plaintiff's employment status remained part-time, and plaintiff's temporary fulltime status and coworker Latoria Smith's maternity leave ended on June 1, 2011. (Doc. 34-1 at 10-11, 47.)

On May 23, 2012, defendant awarded plaintiff fulltime employment in the sanitation department. (Doc. 34-1 at 49.)

.

## IV.  SUMMARY JUDGMENT STANDARD

Courts grant summary judgment when the pleadings and evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. Rademacher v. HBE Corp., 645 F.3d 1005, 1010 (8th Cir. 2011). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Scott v. Harris, 550 U.S. 372, 379 (2007). "There is no discrimination case exception to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

## V. DISCUSSION

Defendant moves for summary judgment on the claim of sexual harassment, arguing against vicarious liability for Moore's actions. Defendant also moves for summary judgment on the claim of retaliation, arguing that plaintiff fails to demonstrate an adverse employment action, and alternatively, that defendant subjected plaintiff to an adverse employment action for a legitimate reason.

**A. Vicarious liability**

Title VII of the Civil Rights Act of 1964 renders unlawful discrimination by an employer with regard to the "compensation, terms, conditions, or privileges of employment" on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). The Supreme Court of the United States has held that the protections of Title VII extend to sexual harassment that does not result in a tangible employment action and also to sexual harassment from a member of the same sex. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79-80 (1998); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986.) "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor, 477 U.S. at 67.

For purposes of summary judgment, defendant does not dispute that Moore sexually harassed plaintiff. (Doc. 33 at 3.) Rather, defendant disputes vicarious liability for Moore's actions. In 1998, the Supreme Court of the United States considered vicarious liability for supervisors in the context of sexual harassment claims under Title VII and issued two opinions on the same day, setting forth the analytical framework. Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). Therein, the Court established an affirmative defense for employers against vicarious liability for sexual harassment by supervisors that results in no tangible employment action. Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765.

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually

> harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[4]

Id. Defendant does not dispute Moore's status as supervisor.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 161. "A tangible employment decision requires an official act of the enterprise, a company act." Id. at 162. Significantly, plaintiff alleges and the record contains no tangible employment action as a result of sexual harassment, and therefore, defendant may assert the Faragher-Ellerth defense.

Regarding the first prong of the Faragher-Ellerth defense, "distribution of a valid antiharassment policy" is compelling proof that employers acted reasonably to prevent sexual harassment. Weger v. City of Ladue, 500 F.3d 710, 719 (8th Cir. 2007). The Eighth Circuit has held that distribution to all employees of such policy identifying three company officials for reporting sexual harassment satisfies the requirement for reasonable prevention efforts. Id. (citing Gordon v. Shafer Contracting Co., Inc., 469 F.3d 1191, 1195 (8th Cir. 2006)).

Defendant distributes employee handbooks that include the sexual harassment policy to employees, including plaintiff, upon hire and reviews the handbooks with employees. (Doc. 34-1 at 8; Doc. 34-4 at 2; Doc. 43-1 at 2.) Plaintiff disputes the fact that he received training regarding the policy. However, even assuming that plaintiff failed to receive such training, the Eighth Circuit has rejected similar arguments, stating that failure to receive training does not render prevention efforts unreasonable. Weger, 500 F.3d at 720. Further undermining his objection, plaintiff expressed familiarity with the general practice of reporting sexual harassment. (Doc. 34-2 at 51-52.) Although defendant's sexual harassment policy identifies only two company officials, defendant's

---

[4] The Eighth Circuit has referred to this affirmative defense as the Faragher-Ellerth defense. See e.g., Crawford v. BNSF Ry. Co., 665 F.3d 978, 983 (8th Cir. 2012); E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 683 (8th Cir. 2012).

policy is substantially similar to the policy in Gordon and satisfies the requirement for reasonable prevention efforts.

The first prong of the Faragher-Ellerth defense also requires employers to take reasonable efforts to correct sexual harassment.  Relevant considerations for whether employers reasonably corrected harassment include the time between notice and remedial measures, the available options, and the effectiveness of those measures.  Stuart v. Gen. Motors Corp., 217 F.3d 621, 633 (8th Cir. 2000).  "[T]he employer's notice of harassment is of paramount importance."  Crawford v. BNSF Ry. Co., 665 F.3d 978, 984 (8th Cir. 2012).  "Generally, where the employer responds to a sexual harassment complaint in such a way as to promptly stop the sexual harassment, there is no basis for finding employer's postcomplaint actions not sufficiently corrective."  Weger, 500 F.3d at 710.

Defendant reacted promptly to plaintiff's allegations of harassment.  Defendant first received notice of Moore's conduct on June 3, 2011, when plaintiff's mother informed her supervisor, who then suggested filing a complaint.  (Doc. 34-3 at 14-15.)  On June 7, 2011, defendant received the written complaint and suspended Moore.  (Doc. 34-1 at 15-22; Doc. 34-2 at 31, 33.)  On June 13, 2011, defendant terminated Moore.  (Doc. 34-1 at 25; Doc. 34-4 at 3.)

Plaintiff does not allege nor does the record contain evidence of Moore harassing plaintiff between the time defendant received notice of Moore's conduct on June 3 and June 13, his date of termination.  Although plaintiff alleges that Moore continued to harass him after his termination, defendant's legal liability for Moore's conduct can be based only on Moore's status as plaintiff's supervisor.  See Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).  The record contains no evidence that Moore acted as plaintiff's supervisor after the date of his termination.  From this record, the court concludes that defendant took reasonable corrective measures and promptly stopped the sexual harassment of plaintiff by Moore.  Moreover, plaintiff fails to proffer substantial, admissible evidence necessary to hold defendant liable for third party harassment.  See Ferderer v. N. Dakota, 447 F.

Supp. 2d 1053, 1075 (D.N.D. 2006) (citing Tatum v. Arkansas Department of Health, 411 F.3d 955, 959 (8th Cir. 2005)).

To avail itself of the Faragher-Ellerth defense, defendant must also satisfy the second prong by showing that plaintiff unreasonably failed to avoid harm by failing to take advantage of opportunities provided by defendant or in any other manner. Demonstration of an employee's unreasonable failure to use the employer's complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). Extended delays in reporting harassment without credible explanation have been considered unreasonable failures to avoid harm. Weger v. City of Ladue, 500 F.3d 710, 724 (8th Cir. 2007) (one year delay); Williams v. Missouri Dep't of Mental Health, 407 F.3d 972, 977 (8th Cir. 2005) abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (four months delay).

The Eighth Circuit has recognized the "great psychological burden" of reporting harassment where "the victims of harassment perceive a bias in favor of their harasser on the part of the individual that will investigate their harassment complaint." Weger, 500 F.3d at 724-25. However, the requirement of reporting despite this burden represents a compromise due to the unfairness of imposing vicarious liability upon an employer without any notice of a supervisor-employee's conduct. Id. at 725; McCurdy v. Arkansas State Police, 375 F.3d 762, 770 (8th Cir. 2004). Therefore, a plaintiff must suffer a "truly credible threat of retaliation" to render delay reasonable. Weger, 500 F.3d at 725.

Plaintiff explained that, due to Moore's threats, he feared that Moore would terminate his employment and cause his mother to lose her employment. (Doc. 34-2 at 21.) Plaintiff also feared that his story would not be believed due to Moore's popularity and Moore's personal relationship with Judy Deering, administrator, and Ralph Menees who worked in human resources. (Id. at 15-19.) Plaintiff's concerns regarding Moore's personal relationship with Deering and Menees are insufficient to excuse his delay. See Weger, 500 F.3d at 725. ("Plaintiffs' concerns that they would not receive a fair

investigation of their complaint due to [chief of police's] relationship with [the lieutenant] are insufficient to excuse their delay.").

Moreover, "general statements by a supervisor that a complaint will be futile or will get the employee in trouble cannot be an automatic excuse for failing to use the complaint mechanism." Id. (quoting Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27, 36 (1st Cir. 2003)).  Although plaintiff feared that Moore would cause him or his mother to lose their jobs, Moore apparently made such threats with the purpose of coaxing plaintiff's acquiescence to his advances.  (Doc. 34-2 at 41, 43.)  The Supreme Court of the United States crafted the Faragher-Ellerth defense in the specific context of a supervisor who made similar threats but, as in the instant action, did not follow through, casting doubt on the notion that such threats standing alone are sufficient to render failure to use defendant's complaint procedure reasonable.  See Ellerth, 524 U.S. at 751. Significantly, the record indicates no threat in any other context or from any other party, nor does the record indicate that defendant had a history of retaliation for complaints of sexual harassment or threats thereof.  See Crawford v. BNSF Ry. Co., 665 F.3d 978, 985 (8th Cir. 2012).  Therefore, the court finds no credible threat of retaliation in the proffered record.

Defendant has established the Faragher-Ellerth affirmative defense.  Accordingly, the court sustains defendant's motion for summary judgment on plaintiff's sexual harassment claim.

**B. Retaliation**

Plaintiff also alleges that defendant retaliated against him for his report of sexual harassment by placing him on unpaid leave during the investigation of the complaint.[5] Title VII of the Civil Rights Act of 1964 also renders unlawful discrimination on the

---

[5] In his complaint, plaintiff alleges that defendant also retaliated against him by reducing his work hours and by supervisor and coworker harassment.  (Doc. 1.)  On August 29, 2012, however, the court dismissed these allegations of retaliation due to lack of subject matter jurisdiction for failure to exhaust administrative procedures, in accordance with Richter v. Advance Auto Parts, Inc., 686 F.3d 847 (8th Cir. 2012).  (Doc. 26.)

basis that one has opposed any employment practice unlawful under Title VII or participated in an investigation, proceeding, or hearing under Title VII. 42 U.S.C.A. § 2000e-3(a). The McDonnell Douglas framework applies to claims of retaliation. Turner v. Gonzales, 421 F.3d 688, 695 (8th Cir. 2005). Specifically, "[o]nce a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, and then shifts back to the plaintiff to show that the defendant's reason was pretextual." Id. at 696; see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

A prima facie case of retaliation requires a showing by substantial evidence of (1) the employee's engagement in protected activity; (2) adverse employment action taken against the employee; and (3) causal connection. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). The burden of establishing a prima facie case is not onerous. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). "The materially adverse action prong is objective, requiring [the court] to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions." Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007). Further, the Supreme Court of the United States recently held that retaliation claims require "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

Plaintiff alleges as the adverse employment action that defendant placed him on unpaid leave during investigation of the complaint. However, the record, including plaintiff's deposition testimony, directly contradicts the allegation that he received no wages for the hours scheduled during his leave. (Doc. 34-2 at 45; Doc. 34-4 at 4.) Plaintiff also complained that he received fewer scheduled hours during his leave of absence. But, because the schedule predated defendant's notice and receipt of the complaint of harassment, plaintiff's complaint to human resources could not have caused defendant to schedule him for fewer hours.

Thus, the only arguable adverse employment action that remains is defendant's placement of plaintiff on leave. Assuming that placing plaintiff on leave constituted an adverse employment action, the second step of the McDonell Douglas framework requires defendant to proffer a legitimate non-retaliatory reason for the action. "The reasons the defendant sets forth are set forth through the introduction of admissible evidence." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 523 (1993). Here, the record indicates that, pursuant to standard practice, in cases of reports of sexual harassment, defendant places both the accuser and the accused on leave in order to facilitate the investigation of the complaint. (Doc. 34-4 at 3, 7-8.) The record also indicates that defendant's investigation took place, and upon its completion, defendant called plaintiff back to work. (Id. at 3, 8.) Therefore, defendant satisfies the second step of the McDonnell Douglas framework.

The third step of the McDonnell Douglas framework requires plaintiff to demonstrate that defendant's proffered reason is merely pretext. Typically, a plaintiff can satisfy the third step through two routes: (1) "indirectly by showing that the employer's proffered explanation is unworthy of credence because it has no basis in fact" or (2) "directly by persuading the court that a prohibited reason more likely motivated the employer." Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006) abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). "For a plaintiff to survive summary judgment, [he] must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive." Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 717 (8th Cir. 2000). With respect to either route, plaintiff has failed to proffer evidence or reasoning that makes defendant's proffered legitimate reason a genuine issue for trial.

Regarding plaintiff's claim of retaliation, defendant has demonstrated entitlement to judgment as a matter of law. Accordingly, the court sustains defendant's motion for summary judgment on plaintiff's claim of retaliation.

## VI.  CONCLUSION

For the reasons stated above, the motion of defendant Northview Village, Inc. (Doc. 32) for summary judgment is sustained.  The action is dismissed with prejudice.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 24, 2013.